**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1413-20

DANIEL MATTHEWS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued June 1, 2022 – Decided July 1, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx-xx008.

Samuel M. Gaylord argued the cause for petitioner (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Samuel M. Gaylord, on the brief).

Juliana C. DeAngelis, Staff Attorney, argued the cause for respondent (Robert S. Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; John B. Monahan, Senior Attorney, on the brief).

PER CURIAM

Petitioner Daniel Matthews appeals from the December 15, 2020 final agency decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System, denying his application for accidental disability retirement benefits. We affirm.

I.

Matthews was a police officer with the Pemberton Township Police Department. On September 5, 2013, he was dispatched to an emergency medical call at a trailer park. He entered a trailer home and found an approximately 250-pound man slumped over in an electric wheelchair, unconscious and in respiratory distress from an overdose. The wheelchair was situated in a narrow room that was cramped with furniture. After evaluating the patient, Matthews requested an expedited response from the first aid squad.[1]

Another police officer and two EMTs arrived shortly after Matthews. The four worked together to move the patient from the wheelchair to a stretcher. The design of the wheelchair and the patient's immediate need for medical attention made it impossible to slide him from the wheelchair onto the stretcher. The

---

[1] We note that in addition to being a police officer, Matthews is a registered nurse, a profession in which he is currently employed.

A-1413-20

crew determined the patient had to be lifted from his seated position over the wheelchair's arm and carried to the stretcher. All participated in lifting the patient.

Matthews was standing to the side of the wheelchair, bent over, lifting the patient's torso. His arms were extended as he lifted the man up and over the wheelchair arm. As the crew brought the patient to the stretcher, Matthews felt pain in his right shoulder. The parties do not dispute that Matthews was totally and permanently disabled from the performance of his job duties as a result of physical injuries he suffered while lifting the patient.

Matthews applied for accidental disability retirement benefits, alleging that he was injured as the result of a traumatic event. The application was referred to an Administrative Law Judge (ALJ) for a hearing. The ALJ issued an initial decision recommending that Matthews's application be denied because his injuries were not the result of an undesigned and unexpected event, but were incurred when Matthews was performing an ordinary and expected aspect of his employment: lifting a patient in need of emergency medical care.

The ALJ found that the Civil Service Commission job description for a police officer includes treating ill people, administering first aid in order to prevent loss of life, the "[a]bility to maintain a high level of muscular exertion

3

for some minimum period of time" and using "a degree of muscular force exerted against a fairly immovable, or heavy object in order to lift, push, or pull that object." In addition, the ALJ noted that Matthews was trained in the administration of first aid at the police academy, underscoring the fact that treating ill persons in emergency situations is a routine responsibility of police officers.

The ALJ concluded that Matthews did not demonstrate "anything unique, unusual, traumatic, or uncommon about this event, to deem it an undesigned or unexpected incident." Instead, the ALJ found, Matthews "was doing what he was trained to do. He was doing a task ordinarily required of a police officer . . . ."

On December 15, 2020, the Board adopted the ALJ's initial decision.[2]

This appeal follows. Matthews argues the Board erred in its conclusion that his injuries were not caused by an undesigned and unexpected event.

## II.

Our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "unless there

---

[2] Matthews was awarded ordinary disability retirement benefits for his injuries.

is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result . . . .'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Id. at 99.

To qualify for accidental disability benefits an employee must demonstrate that he or she "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties . . . ." N.J.S.A. 43:16A-7(a)(1). "[A]n accidental disability retirement entitles a member to receive a higher level of

5

benefits than those provided under an ordinary disability retirement." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008).

"[A] traumatic event is . . . an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Richardson v. Bd. of Trus., Police & Firemen's Ret. Sys., 192 N.J. 189, 212 (2007).

> [T]o obtain accidental disability benefits, a member must prove:
>
> 1.  that he is permanently and totally disabled;
>
> 2.  as a direct result of a traumatic event that is
>
>     a.  identifiable as to time and place,
>
>     b.  undesigned and unexpected, and
>
>     c.  caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3.  that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4.  that the disability was not the result of the member's willful negligence; an[d]
>
> 5.  that the member is mentally or physically incapacitated from performing his usual or any other duty.

6

[Id. at 212-13.]

We have carefully reviewed the record and find no basis on which to reverse the Board's determination. There is no doubt that Matthews provided life-saving emergency medical care to a man in serious distress. He quickly evaluated the patient and, having determined that his condition was critical, operated in concert with other first responders to expeditiously move the heavy patient from his wheelchair to a stretcher. As undesigned and unexpected as these circumstances might be for the ordinary person, they are routine occurrences for a police officer. Matthews was trained to treat ill people and expected, as part of his position, to use muscular force to move heavy objects in emergency situations. We cannot quarrel with the Board's determination that his unfortunate injuries were the result of the performance of his ordinary responsibilities in response to an expected event.

We do not agree with Matthews's argument that our holding in Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346 (App. Div. 2014), requires reversal here. Moran involved a fireman who was assigned to an engine company with the role of taking hoses into a burning building to put out a fire. Id. at 349. A different unit, a truck company, was responsible for forcing entry into a burning structure and rescuing any occupants. Ibid. The truck company

had special equipment specific to those functions, such as a hydraulic ram, a battering ram, and a metal tool with an ax. Id. at 349-50.

Moran's engine company was dispatched to a fire in what was thought to be a vacant building. The firemen did not expect the building to be occupied and set about a defensive attack on the fire. Id. at 350. The truck company, although dispatched to the fire, was not on the scene. Ibid. As Moran was unrolling the hose to put out the fire, he unexpectedly heard screams from people trapped in the burning building. Ibid. In the absence of the truck company and with none of the specialized equipment ordinarily used to break through a fortified door, Moran used his shoulder, leg, and back to break down the door and rescue the people trapped inside. Ibid. As a result of his rescue efforts, Moran sustained permanent injuries. Id. at 347.

We reversed the Board's denial of Moran's application for accidental disability retirement benefits. As we explained,

> The undesigned and unexpected event here was the combination of unusual circumstances that led to Moran's injury: the failure of the truck unit to arrive, and the discovery of victims trapped inside a fully engulfed burning building, at a point when Moran did not have available to him the tools that would ordinarily be used to break down the door. As a result, he was forced to carry out his paramount duty to rescue fire victims, by manually kicking in the door. Had he not

8

responded immediately to break down the door, the victims would have died.

. . . .

While this was not a classic "accident" in the sense that the house did not collapse on Moran, nor did he trip while carrying a fire hose, it was clearly an unexpected and undesigned traumatic event that resulted in Moran's suffering a disabling injury while performing his job.

. . . .

Nor was this a situation in which Moran should have expected to find himself.

[Id. at 354-55 (footnote omitted).]

We do not view the circumstances in which Matthews was injured to be the legal equivalent of those before us in Moran. While we in no way intend to diminish Matthews' life-saving acts, the emergent movement of a critically ill person is the sort of challenge that a police officer routinely faces. Matthews was not alone when the patient was moved, he was not without specialized equipment ordinarily used to move an unconscious patient, the movement of ill persons was not outside of Matthews's typical responsibilities, and the use of physical strength was not an unusual method of accomplishing the objective of moving a person in need of emergency medical treatment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9